# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **DONALD REINHARDT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:15CV169NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Donald Reinhardt (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 15). Defendant has filed a brief in support of the Answer. (Doc. 20). Plaintiff has filed a Reply. (Doc. 21). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 14).

# I.
# PROCEDURAL HISTORY

On July 12, 2010, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of December 20, 2007. (Tr. 241-44). Plaintiff's applications were denied, and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 135-48). After a hearing, by decision, dated October 28, 2011, the ALJ found Plaintiff not disabled. (Tr. 113-28). On November 30, 2012, the Appeals Council granted Plaintiff's request for review and remanded the matter to the ALJ. (Tr. 129-32).

A second hearing was held on April 17, 2013, and, on June 21, 2013, the ALJ issued a second decision, finding Plaintiff not disabled. (Tr. 15-30). On November 20, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's June 21, 2013 decision. (Tr. 1-6). As such, the ALJ's June 21, 2013 decision stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v.

Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See

Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant]

could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993);

Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly

discuss each <u>Polaski</u> factor." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1072 (8th Cir. 2004). <u>See also</u> <u>Steed</u>, 524 F.3d at 876 (citing <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. <u>See</u> <u>id.</u> Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. <u>See</u> <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. <u>See</u> <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that

can realistically be performed by someone with the plaintiff's qualifications and capabilities.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which the ALJ finds credible.  See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180.  Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled.  See Onstead, 962 F.2d at 804.  Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position.  See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

At the second hearing, Plaintiff testified that he was 48 years old and weighed 195 pounds; that he could no longer work due to depression and panic

disorder; that, 8 days a month, he had difficulty getting out of bed; that, when he had flare-ups of his Hepatitis C, 5 to 6 times a month, he was achy and fatigued; that he had 2 to 3 panic attacks a month which lasted from 5 to 30 minutes; that, when he had panic attacks, his heart started beating, he hands became sweaty, and his head went "around"; and that his back hurt "all the time."  (Tr. 41, 46-47, 54-55, 81).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2010; that he had not engaged in substantial gainful activity since December 20, 2007, his alleged onset date; that he had the severe impairments of depression, anxiety, a lumbar annular bulge, and bilateral facet hypertrophy; and that Plaintiff did not have an impairment or combination of impairments that met or medially equaled the severity of a listed impairment.  The ALJ further found that Plaintiff had the following RFC:  Plaintiff could perform light work except that he could only occasionally climb stairs and ramps, but never climb ladders or scaffolds; he could occasionally stoop, kneel, balance, crouch, and crawl; he had to avoid concentrated exposure to vibrations and hazards such a unprotected heights and machinery; he could only occasionally carry out detailed instructions, but had no limitations with regard to simple instructions; he could sustain an ordinary routine without special supervisory attention; and he could have frequent interaction with supervisors and coworkers and occasional interaction with the

general public. Additionally, the ALJ found that Plaintiff could not perform his past relevant work; that there was other work, existing in significant numbers in that national economy, which Plaintiff could perform; and that, therefore, Plaintiff was not disabled. (Tr. 15-30).

Plaintiff contends that the ALJ's decision is not based on substantial evidence for the following reasons: The ALJ failed to find that his Hepatitis C was severe; the ALJ incorrectly evaluated his daily activities; the ALJ failed to properly consider the reasons Plaintiff did not undergo therapy for his Hepatitis C; the ALJ incorrectly considered his Global Assessment of Functioning (GAF) scores; and the ALJ erred in regard to the weight he gave to the opinions of Joyce Majure-Lees, M.D., and Kyle DeVore, Ph.D., when determining Plaintiff's RFC. For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's determination that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were

not credible.") (citing <u>Tellez v. Barnhart</u>, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  <u>See Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>Hutsell</u>, 892 F.2d at 750; <u>Benskin</u>, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite <u>Polaski</u>, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  <u>Randolph v. Barnhart</u>, 386 F.3d 835, 842 (8th Cir. 2004); <u>Wheeler v. Apfel</u>, 224 F.3d 891, 895 n.3 (8th Cir. 2000); <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996); <u>Montgomery v. Chater</u>, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each <u>Polaski</u> factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  <u>See Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000).  <u>See also Tucker v. Barnhart</u>, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each <u>Polaski</u> factor as long as the analytical framework is recognized and considered."); <u>Strongson</u>, 361 F.3d at 1072; <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the ALJ's determination that Plaintiff was not *entirely* credible is based on substantial evidence. (Tr. 15).

First, the ALJ considered the objective medical evidence and concluded that it did not support Plaintiff's allegations of disabling limitations. (Tr. 18-28). See Social Security Ruling (SSR) 06-7p(4), 1996 WL 374186, at *1 (July 2, 1996) ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence," although disability determinations "cannot be made solely on the basis of objective medical evidence."). Indeed, a claimant's "symptoms, including pain, will be determined to diminish his capacity for basic work activities to the extent that he alleged functional limitations and restrictions due to symptoms [which] can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." Id. at *2.

In regard to Plaintiff's Hepatitis C, the ALJ considered that it was stable. (Tr. 18). See Ahlstrom v. Colvin, 2014 WL 4724800, at *10 (E.D. Mo. Sept. 23, 2014) (finding that the claimant's chronic fatigue syndrome was a non-severe impairment in part because her provider described her condition as stable). In this regard, the record reflects that Plaintiff was diagnosed with Hepatitis C in February 2008. (Tr. 432). On September 27, 2012, Suraj Kumaran, M.D., reported that Plaintiff's Hepatitis C was "asymptomatic" (Tr. 813), and, on October 25, 2012, Suraj Kumaran, M.D., reported that Plaintiff's Hepatitis C was "stable" (Tr. 810). At other times it was noted that Plaintiff was fatigued (Tr. 368, 431, 785, 882, 889, 901).[1]

In regard to Plaintiff's allegation of back pain, as considered by the ALJ, it was frequently reported that Plaintiff had normal gait and could walk on his heels and toes; that he had negative straight-leg raise tests; and that he had full strength and intact sensation in his lower extremities. (Tr. 26, 391, 398–99, 402, 404, 406, 409, 411, 413–14, 468, 472–74, 476, 480, 482–83, 485–87, 489, 498, 508, 513, 538, 653, 891, 898). Further, as considered by the ALJ, Plaintiff frequently had only slightly reduced range of motion (ROM) and mild tenderness in his back. (Tr. 26, 399, 404, 409, 413–14, 473–74, 482–83, 486–87).

---

[1] Symptoms of Hepatitis C include jaundice, stomach pain, and loss of appetite, nausea, and fatigue. See http://www.webmd.com/hepatitis/hepc-guide/digestive-diseases-hepatitis-c.

In particular, the impression from Magnetic Resonance Imaging (MRI), conducted on August 13, 2009, was no large disc herniation or canal stenosis, "mild annular bulge" at L3-L4 and L5-S1, and a "posterior annular tear" at L3-L4. Also alignment was normal. (Tr. 382). When Plaintiff presented for pain management due to back pain, in September 2009, Plaintiff said his pain was increased with activity and with bending forward and sitting, and that he was able to sleep eight hours without being disturbed by back pain. He denied numbness or weakness in his lower extremities. On examination of Plaintiff's lower back, there were "[n]o obvious masses seen or felt." Examination of Plaintiff's lower extremities was within normal limits in all muscle groups; his muscle tone was within normal limits; and he had no obvious sensory loss in the lower extremities. (Tr. 391-92). On January 11, 2010, Plaintiff had flexion of forty-five degrees in the lumbar spine, examination of Plaintiff's lower extremities was within normal limits in all muscle groups, and he had normal tone in all muscle groups on both sides. (Tr. 377). On February 12, 2010, findings were negative regarding Plaintiff's musculoskeletal and neurological systems, and Plaintiff had no clubbing, cyanosis, or edema in his lower extremities. (Tr. 549). On April 9, 2010, Suresh Krishnan, M.D., noted that Plaintiff complained of back pain, but, on examination, Dr. Krishnan noted inspection of Plaintiff's cervical, thoracic, and lumbar spines was within normal limits and that palpation was normal or

unremarkable; that Plaintiff's ROM was normal in regard to flexion and extension in the cervical and thoracic spines; that Plaintiff's ROM was reduced in the lumbar spine; that Plaintiff had "5/5" muscle strength in the lumbar spine; that sensation in Plaintiff's lower extremities was normal; that Plaintiff was "negative for back pain bilaterally in the lumbar spine; that Plaintiff's diagnosis was degeneration of the lumbar or lumbosacral intervertebral disc and lumbar disc displacement; that Plaintiff's prognosis was "poor"; and that Plaintiff was expected to "fully recover" and was "progressing [with treatment] as anticipated." (Tr. 404-405). On June 30, 2010, Dr. Krishnan changed Plaintiff's prognosis to "good," and reported that Plaintiff had reduced ROM in the lumbar spine. Dr. Krishnan also reported, on this date that Plaintiff was taking care of himself; that Plaintiff was "expected to fully recover"; and that he was "progressing as anticipated." (Tr. 480-83).

On July 20, 2011, Dr. Krishnan reported that, on examination, Plaintiff's cervical spine/upper extremity and thoracic spine/trunk were normal, and that inspection of Plaintiff's lumbar spine/lower extremities was unremarkable. Also, Plaintiff's prognosis was "good" and he was "expected to fully recover." (Tr. 540). On March 20, 2013, Dr. Krishnan reported, on examination, that there was no abnormality in the cervical spine; that Plaintiff had normal curvature of the cervical spine; that palpation of the cervical facet revealed no pain; that the cervical spine was stable; that hyperextension of the thoracic spine did not cause

Plaintiff to have increased pain; that palpation of the lumbar facet revealed no pain; that Plaintiff had pain with anterior lumbar flexion; and that no abnormality of the lumbar spine was noted. (Tr. 903).

In regard to Plaintiff's alleged mental impairments, treatment notes of S.A. Raza, M.D., dated October 17, 2007, approximately two months before Plaintiff's alleged onset date, address Plaintiff's social situation. (Tr. 433). In February 2008, when Plaintiff was not taking his prescribed Prozac, Dr. Raza reported that Plaintiff said his depression came back, along with a lack of energy. (Tr. 432). In May 2008, Dr. Raza reported that Plaintiff said he felt tired and irritable and that Plaintiff said he could not work due to fatigue. (Tr. 431). In December 2008, Dr. Raza reported that Plaintiff had the "demeanor of someone who [was] feeling helpless & hopeless." Plaintiff denied feeling depressed or withdrawn, but said he was feeling tired. (Tr. 429). In March 2009, Dr. Raza reported that Plaintiff complained of social anxiety. (Tr. 428). On July 22, 2009, Dr. Raza did not comment on Plaintiff's mental status other than noting that Plaintiff reported that he was irritable. (Tr. 427). In August 2010, Dr. Raza reported that Plaintiff said he was "holding up ok"; that he was sleeping well; and that his appetite was back to normal." (Tr. 602).

On October 27, 2011, Plaintiff saw David Goldmeier, M.D., for an initial assessment of his mental conditions. Dr. Goldmeier reported, pursuant to a mental

status examination, that Plaintiff was polite, anxious, and cooperative; that he had good eye contact; that, in regard to Plaintiff's affect, he was "slightly decreased, slightly irritable, [and] slightly anxious with no liability"; that he had no psychomotor abnormalities or involuntary movements; that he had logical and goal directed responses; that he had positive "future plans and outlook that mitigate[d] suicidal or homicidal thoughts"; that he had no psychosis, auditory or visual hallucinations, delusions or thought disorder; that he had fair insight and judgment; and that he had clear sensorium. Dr. Goldmeier's diagnosis, at Axis IV, was financial stress and "some family problems with 2 dtrs." (Tr. 745). On February 2, May 31, July 5, August 16, September 27, October 15, and December 6, 2012, Dr. Goldmeier reported, pursuant to mental status examinations, that Plaintiff had good eye contact; that his mood was a "little depressed, anxious"; that his affect was "slightly decreased, [and] slightly anxious with no lability"; that Plaintiff had logical and goal directed responses, no suicidal ideations, and positive future plans; that he was negative for a thought disorder; and that he had fair insight and judgment. (Tr. 749-60).

Dr. Goldmeier opined, in a Medication Management form, dated January 17, 2013, that Plaintiff had fair eye contact and appropriate behavior, was oriented, had an adequate fund of knowledge, had "ok" recent and remote memory, did not have impaired attention and concentration, had no speech abnormalities, had a depressed

affect, had concrete abstract reasoning and intact computation, had no delusions, and had fair judgment and insight.  (Tr. 762-64).[2]

Second, the ALJ considered Plaintiff's lack of treatment.  In this regard, on September 27, 2012, when Plaintiff was asymptomatic, Dr. Kumaran reported that Plaintiff was not on medication for Hepatitis C.  (Tr. 813).  Further, although Plaintiff testified that he did not pursue treatment for his Hepatitis C because he was concerned about the possible side effects on his depression (Tr. 52-53), the record reflects that Plaintiff told a health care provider, in May 2008, that he was diagnosed with Hepatitis C ten years earlier, and did not pursue treatment because he did not have insurance (Tr. 431).  In October 2009, Plaintiff reported that his Hepatitis C was not being treated because he had Medicaid and could not find a doctor who would accept it.  (Tr. 426).  In October 2010, Plaintiff stated that he decided to postpone treatment for his Hepatitis C because his daughter had returned home with her child after getting a divorce.  (Tr. 602).  Further, although Plaintiff testified that his psychiatrist initially indicated that he wanted Plaintiff to "hold off on the treatment" for Hepatitis C, Plaintiff also testified that his psychiatrist eventually approved the treatment.  Nonetheless, when asked by the

_____

[2]    In his Reply brief, Plaintiff criticizes Defendant's reference to treatment notes for Plaintiff's physical conditions when addressing Plaintiff's mental impairments. (Doc. 21 at 2).  The court notes that the treatment notes of doctors are just one factor to be considered and are, in fact, relevant to the court's determination of whether the ALJ's decision is based on substantial evidence.

ALJ what he was "waiting for," Plaintiff responded that he was "scared" that he was going "to get depressed" or "in a bad funk." He "just [did not] want to go there." (Tr. 94-95). See Wildman v. Astrue, 596 F.3d 959, 964-65 (8th Cir. 2010) (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control).

Additionally, as considered by the ALJ, the record does not reflect that Plaintiff was hospitalized for a mental condition or that he was ever referred to an orthopedic surgeon or to a neurosurgeon for his alleged physical impairments. (Tr. 26). Conservative treatment and no surgery are consistent with discrediting a claimant's allegation of disabling pain. Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); Casey v. Astrue, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged"). Although Plaintiff argues that many individuals with mental impairments which prevent them from working have not been hospitalized for their mental impairments (Doc. 15 at 13), Plaintiff's lack of hospitalization was only one of many factors considered by the ALJ when determining the credibility of Plaintiff's assertions regarding the severity of his mental impairment, see Ramic v. Colvin, 2015 WL 430194, at *11 (E.D. Mo. Feb.

2, 2015) (one factor detracting from the claimant's allegations of a disabling mental impairment was the lack of any hospitalizations), and, as discussed above, the extent of a claimant's treatment is relevant to evaluating a claimant's credibility, see 20 C.F.R. §§ 404.1529(c)(3)(v) , 416.929(c)(3)(v) (in evaluating the intensity of a claimant's symptoms, an ALJ will consider the claimant's treatment).

Third, the ALJ considered what Plaintiff told his medical providers. Contradictions between a claimant's sworn testimony and what he actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006). In particular, Plaintiff told his medical provider, in October 2010, that he was "holding up ok"; that he was better than he had been a few weeks earlier; and that his appetite was back to normal. (Tr. 602). On June 29, 2011, Plaintiff told his medical provider that he had "no complaints." (Tr. 605). On July 20, 2011, Dr. Krishnan reported that Plaintiff said, on a scale of 1 to 10, that his pain was 8, at worst, and 2, at best, and that his pain and functioning had improved since his last visit. (Tr. 537). On October 27, 2011, Plaintiff told Dr. Goldmeier that his mood was "stable, slightly decreased"; that he had no crying spells; that he was mildly irritable; that he was anxious; that his appetite was "ok" and his weight was stable; that his concentration and interest were fair; and that he had "some fatigue." (Tr. 743). Additionally, Plaintiff told Dr. Kumaran, on September 27, 2012, that his Hepatitis C "symptoms [were] fairly

controlled." (Tr. 813). Further, on March 20, 2013, Plaintiff told Dr. Krishnan that his current pain level was "2/10"; that he averaged 7 hours of sleep a night; that his mood was "good"; and that his current functional level was "7." (Tr. 900).

Fourth, the court notes that it was frequently reported that Plaintiff's conditions were controlled with medication. For example, on September 10, 2009, Plaintiff stated that pain medication and physical therapy helped his back pain. (Tr. 391). On June 30, 2010, when Plaintiff reported that he was taking care of himself and using bed rest and pain medication, the prognosis for Plaintiff's back condition improved from poor to good. (Tr. 480, 483). On October 25, 2012, Dr. Kumaran reported that Plaintiff's chronic obstructive pulmonary disease (COPD) was controlled with Spiriva, Advair, and Albuterol. (Tr. 810). On March 20, 2013, Plaintiff told Dr. Krishnan that his back "pain was relieved by 90% by taking medications," and that his activities had improved "after starting medications." Conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling). Also, as discussed above regarding Plaintiff's back pain, Dr. Krishnan reported that Plaintiff was expected to fully

recover.  Additionally, both Dr. Goldmeier and Dr. Raza reported that Plaintiff did not have side effects from medication.  (Tr. 762, 848).  See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994).

Fifth, the ALJ considered that Plaintiff's daily activities were inconsistent with his complaints.  In particular, the ALJ considered that Plaintiff could drive, cook meals, interact with his children, care for his hygiene, and perform basic household chores.  (Tr. 26).  In regard to Plaintiff's daily activities, the court notes that Plaintiff also testified he was able to drive; that, on some days, he could "maybe load some dishes"; and that he had a good relationship with his children and read self-help books to try to help his relationship with his children.  Further, Plaintiff stated, in a Function Report-Adult, that he shopped in stores for his own personal items; that he enjoyed the company of his children, "on occasion"; that, when he had a good day; he helped with laundry; that that he was able to get his own meals; and that he prepared his meals "most of the time."  (Tr. 19, 26, 28, 41, 51, 293-96, 433).

While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, a claimant's daily activities can

nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints.  See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart").  See also Ponders v. Colvin, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family"); Roberson v. Astrue, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for groceries, and visited friends).

Plaintiff argues that the ALJ exaggerated his ability to engage in daily activities.  (Doc. 15 at 12-13).  The court notes, however, that Plaintiff relies on his own testimony at the hearing that he was depressed and could not get out of bed eight days a month and that he experienced flare-ups of his Hepatitis C five to six times a month at which time he became achy and fatigued.  (Tr. 47, 54).  He also

relies on his self-reporting, in the Function Report-Adult, completed in August 2010, that he started the day "extremely weak, fatigued, and suffer[ing] from achy muscles and joint pain[,] especially in [his] lower back." Plaintiff further relies on statements he made in the Function Report-Adult that some days he had "the overall feeling of sickness along with hopeless[ness] and depressed feelings about his life and future"; that, on some days, he could not get out of bed "at all"; that this could last "for days"; that he often did not dress, bathe, or shave; and that housework was "too much" for him to handle. (Doc. 15 at 13).

To the extent Plaintiff urges the court to reweigh the evidence regarding his daily activities and draw its own conclusion, it is not the function of the court to do so. See Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations omitted). The ALJ, moreover, was not required to believe all of Plaintiff's assertions regarding the effect of his conditions on his daily activities; he was only required to believe Plaintiff's allegations to the extent he found them credible. See Gregg, 354 F.3d at 714. In any case, Plaintiff's treating doctor, Dr. Raza, reported that Plaintiff had only a "slight" limitation in activities of daily living (Tr. 847), and Plaintiff's daily activities were only one of many factors considered by the

ALJ when determining Plaintiff's credibility (Tr. 25-28). The court finds, therefore, that the ALJ's conclusions regarding Plaintiff's daily activities are based on substantial evidence, and that Plaintiff's arguments to the contrary are without merit.

Fifth, the court notes that it was reported that Plaintiff was non-compliant with prescribed medical advice. For example, in February 2008, Dr. Raza noted that Plaintiff took prescribed Prozac "very irregularly." (Tr. 432). Also, on September 10, 2009, when Blake Anderson, M.D., recommended that Plaintiff have a lumbar epidural steroid injection and lumbar facet nerve block, Plaintiff chose not to have the procedure done that day, and stated that he "might decide to have the procedure done at a later date." He was also advised, on this date, to stop smoking "as it [would] stop[] the progression of degeneration of his disc." (Tr. 393). Additionally, when Dr. Krishnan suggested Plaintiff have a lumbar epidural steroid injection for his back pain, Plaintiff declined to proceed with this procedure. (Tr. 483). See Wildman v. Astrue, 596 F.3d 959, 964-65 (8th Cir. 2010) (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control).

Sixth, the court notes that, on March 11, 2009, Plaintiff told Dr. Raza that he was stressed due to his having a disability hearing in the next few weeks; that he felt guilty for being a burden on his parents; and that his "still [being] on parole []

add[ed] to his stress." (Tr. 428). On October 2009, Plaintiff told Dr. Raza that his daughter's moving in with him had brought some changes in his life style, but that he did not mind the changes; he was tolerating the resulting extra work, but "if it [was to go on] for a long time, he [might] feel the stress." (Tr. 426). In January 2010, Plaintiff told Dr. Raza that his sleep was affected by the stress "re the court hearing." (Tr. 425). In June 2010, Dr. Raza reported that Plaintiff was "preoccupied [with] his Hep C diagnosis & treatment." (Tr. 424). On April 6, 2011, Plaintiff reported that he was "very stressed out," in part due to his daughter's behavior and his recent hospitalization for pneumonia. (Tr. 604). Finally, as stated above, at Axis IV, Dr. Goldmeier noted that Plaintiff's problems were financial stress and "some family problems with 2 dtrs." Indeed, situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations).

Seventh, the ALJ considered that no treating physician ever imposed any permanent limitations on Plaintiff in treatment notes. (Tr. 26). See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work."). See also Eichelberger, 390

F.3d at 590 (ALJ could find claimant not credible based in part on fact that no physician imposed any work related restrictions).

In conclusion, the court finds that the ALJ gave good reasons for not finding Plaintiff fully credible, and that the ALJ's credibility determination is based on substantial evidence and is consistent with the Regulations and case law. See Perkins v. Astrue, 648 F.3d 892, 900–01 (8th Cir. 2011) (a reviewing court should defer to the ALJ's credibility assessment if the ALJ provided a good reason for discrediting the claimant's subjective complaints).

**B.     Severity of Plaintiff's Hepatitis C:**

As stated above, at Step 2 of the sequential analysis, an ALJ is required to determine if a claimant has a severe impairment or combination of impairments. "The severity Regulation adopts a standard for determining the threshold level of severity:  the impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'" Bowen v. Yuckert, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c)).  A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience.  See 20 C.F.R. §§ 404.1520(c), 404.1521(a). However, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do

basic work activities." <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007). <u>See also</u> 20 C.F.R. § 404.1521(a) (describing basic work activities). In other words, if the impairment has only a minimal effect on the claimant's ability to work, then it is not severe. <u>See</u> <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir. 2007). A plaintiff has the burden of establishing a severe impairment. <u>See</u> <u>Kirby</u>, 500 F.3d at 707.

An impairment or combination of impairments are not severe if they are so slight that it is unlikely that the claimant would be found disabled even if his age, education, and experience were taken into consideration. <u>Yuckert</u>, 482 U.S. at 153 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."). Moreover, "'[a]n impairment imposes significant limitations when its effect on a claimant's ability to perform basic work is more than slight or minimal.'" <u>Warren v. Shalala</u>, 29 F.3d 1287, 1291 (8th Cir. 1994) (quoting <u>Cook v. Bowen</u>, 797 F.2d 687, 690 (8th Cir. 1986)). <u>See also</u> <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir. 2007) (holding that if a claimant's impairments would have no more than a minimal effect on his ability to work, they do not satisfy the requirement of step two).

Further, 20 C.F.R. § 404.1521(b) defines basic work activities as follows:

(b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include–

(1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)  Capacities for seeing, hearing, and speaking;
(3)  Understanding, carrying out, and remembering simple instructions;
(4)  Use of judgment;
(5)  Responding appropriately to supervision, co-workers and usual work situations; and
(6)  Dealing with changes in a routine work setting.

While Plaintiff's medical records of February 2008 reflect that he was diagnosed with Hepatitis C when in prison (Tr. 432), the court notes that to prove disability, the evidence must establish functional limitations, not just medical diagnosis.  See 20 C.F.R. §§ 404.1545(e), 416.945(e); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . ., of course, says nothing about the severity of the condition.").  Thus, the ALJ was not required to find Plaintiff disabled merely because he had been diagnosed with Hepatitis C.

Also, as discussed above in regard to Plaintiff's credibility, the record reflects that Plaintiff's Hepatitis C was stable and, at times, asymptomatic. Although Plaintiff testified that he was fatigued, which is a symptom of Hepatitis C, see n.1 below, the ALJ found Plaintiff's allegations regarding the severity of his symptoms not fully credible, and the court has found the ALJ's decision, in this regard, is based on substantial evidence.  Further, as discussed above, Plaintiff's medical providers found he had normal memory, concentration, and attention.

Additionally, as discussed above, Plaintiff chose not to take medication for his Hepatitis C, even when his psychiatrist approved such treatment; he gave varying and inconsistent reasons for his lack of treatment for his Hepatitis C; and Plaintiff told doctors, on occasion, that his symptoms, including loss of appetite, were better and controlled.

In conclusion, the court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's Hepatitis C was not severe and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

## C.    Plaintiff's RFC and the Weight Given to Medical Opinions:

As set forth above, the ALJ found that Plaintiff had the following RFC: Plaintiff could perform light work except that he could only occasionally climb stairs and ramps, but never climb ladders or scaffolds; he could occasionally stoop, kneel, balance, crouch, and crawl; he had to avoid concentrated exposure to vibrations and hazards such a unprotected heights and machinery; he could only occasionally carry out detailed instructions, but had no limitations with regard to simple instructions; he could sustain an ordinary routine without special supervisory attention; and he could have frequent interaction with supervisors and coworkers and occasional interaction with the general public.

Plaintiff challenges various aspects of the ALJ's RFC determination. Specifically, Plaintiff argues that the ALJ should have given more weight to

opinions of his mental-health providers, including Dr. Raza and Dr. Goldmeier. Plaintiff also argues that the ALJ failed to account for his fatigue when formulating his RFC and improperly relied upon the opinion of Dr. Majure-Lees, a state-agency non-examining doctor, and on the opinion of Dr. DeVore, also a state-agency non-examining doctor. (Doc. 15 at 11-15).

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity

is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

**1.      Plaintiff's Mental Impairments and Medical Opinions Relevant to Plaintiff's Mental Impairments:**

Although Plaintiff argues that the ALJ's RFC determination failed to account for the severity of his mental health symptoms, as stated above in regard to the severity of Plaintiff's Hepatitis C, the mere existence of a medical condition is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). As discussed above in regard to Plaintiff's credibility, any abnormal mental health findings, as reflected in Plaintiff's treatment notes, were never extreme. In any case, the ALJ did account for Plaintiff's mental limitations, to the extent he found them credible, as the RFC which the ALJ assigned to Plaintiff limits him to only

occasionally carrying out detailed instructions and to only occasional contact with the public. See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012) (holding that the ALJ was required to include only credible limitations); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded."). Notably, in regard to Plaintiff's alleged mental impairments, Plaintiff stated in a Function Report – Adult that he did not have difficulty understanding, following instructions, and getting along with others. (Tr. 296).

### a. Opinion of Dr. DeVore:

Dr. DeVore opined on a Psychiatric Review Technique form, dated October 15, 2010, that Plaintiff had a mild limitation in activities of daily living and moderate limitations in maintaining social functioning and concentration, persistence, or pace. Dr. DeVore indicated that he considered that Plaintiff alleged he had anxiety and depression, but that he concluded, based on the medical evidence of record (MER), that Plaintiff's concentration, persistence, or pace were not limited due to a mental impairment; Plaintiff's limitations in these areas were dependent on Plaintiff's physical condition. Dr. DeVore also concluded that, to the extent Plaintiff reported that he did not socialize with anyone other than his children, Plaintiff did so by choice. Dr. DeVore further concluded that Plaintiff

was capable of performing simple work tasks and that he "might do better with no public contact and no intense social interactions." (Tr. 448).

Dr. DeVore also completed a Mental RFC Capacity Assessment form, dated, October 15, 2010, in which he opined that Plaintiff was not significantly limited in any area of understanding and memory. In regard to the various areas of sustaining concentration and persistence, Dr. DeVore concluded that Plaintiff was not significantly limited in carrying out very short and simple instructions, performing activities within a schedule, sustaining an ordinary routine without special supervision, working in coordination with others, making simple work-related decisions, and completing a normal workday and workweek without interruption from psychologically based symptoms, and that he was moderately limited in regard to carrying out detailed instructions and maintaining attention and concentration for extended periods. In regard to the various areas of social interaction, Dr. DeVore opined that Plaintiff was not significantly limited in regard to asking simple questions, getting along with coworkers without distracting them or exhibiting behavioral extremes, and maintaining socially appropriate behavior, and moderately limited in regard to other areas of social interaction. Finally, Dr. DeVore opined that Plaintiff was not significantly limited in any area of adaption. (Tr. 449-50).

Plaintiff argues that the ALJ gave improper weight to Dr. DeVore's opinion. (Doc. 15 at 15). Dr. DeVore, however, is a State-agency non-examining doctor. As such, he is a highly qualified expert in Social Security disability evaluation, and the ALJ, was, therefore, required to consider his findings as opinion evidence. See Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010) ("[W]hen evaluating a nonexamining source's opinion, the ALJ 'evaluate[s] the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources.'") (quoting 20 C.F.R. § 404.1527(d)(3) and citing § 404.1527(f) (discussing rules for evaluating nonexamining state agency opinions).

Further, although Plaintiff argues that Dr. DeVore did not indicate which of Plaintiff's medical records he reviewed when completing the Mental RFC Assessment, Dr. DeVore did indicate, on the Psychiatric Review Technique form which he completed on the same day he completed the Mental RFC Assessment, that he considered the MER. (Tr. 448). Finally, the ALJ did not rely solely on Dr. DeVore's opinion when determining Plaintiff's RFC, as the ALJ noted that Dr. DeVore's opinion was consistent with findings contained in the treatment notes of Dr. Raza and Dr. Goldmeier. (Tr. 28). Cf. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) ("Although a treating physician's opinion is generally entitled to

substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole.").

### b. *Opinion of Dr. Raza:*

Dr. Raza completed a form, titled Residual Functional Capacity: Mental Disorders (Mental RFC form), in which he opined that Plaintiff's abilities were poor to none in regard to many of the requirements for performing unskilled work, including maintaining attention for two hour segments, maintaining regular attendance, dealing with normal stress, performing at a consistent pace, and completing a normal workday and workweek without interruptions from psychologically based symptoms. In regard to other requirements needed for unskilled work, Dr. Raza opined that Plaintiff had fair ability. He also opined that Plaintiff had poor to no ability in regard to the mental abilities and aptitude needed to perform semi-skilled work and skilled work, and that Plaintiff had fair ability in regard to interacting appropriately with the public, maintaining socially appropriate behavior, adhering to basic standards of cleanliness, and using public transportation. Finally Dr. Raza reported that Plaintiff had a slight restriction in regard to activities of daily living, and a moderate restriction in regard to social functioning, and that he seldom had deficiencies of concentration, persistence, or pace. (Tr. 844-53).

Upon determining Plaintiff's RFC, the ALJ gave little weight to Dr. Raza's opinion as expressed in the Mental RFC form. (Tr. 28). Plaintiff contends that the ALJ erred in this regard. Upon determining the weight given to Raza's opinion, the ALJ reasoned that Dr. Raza's opinion was internally inconsistent. (Tr. 28). See Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013) (holding that an ALJ need not accord a treating physician's opinion controlling weight where it is internally inconsistent). For example, in the Mental RFC form, Dr. Raza opined that Plaintiff had poor to no ability in regard to the mental abilities and aptitude needed to perform work functions, but he also stated that Plaintiff "seldom" had deficiencies in concentration, persistence, or pace, that Plaintiff was only slightly restricted in activities of daily living, and that Plaintiff had a GAF score of 60, which represents only moderate symptoms.[3] (Tr. 845-47).

---

[3]    Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and

Further, Dr. Raza's RFC assessment, as expressed on the Mental RFC form, was inconsistent with Dr. Raza's own treatment notes as discussed above in regard to Plaintiff's credibility.  See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"); Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").

Although Plaintiff cites instances allegedly supporting his argument that Dr. Raza's treatment notes are consistent with his RFC assessment, Dr. Raza's notes frequently recorded Plaintiff's subjective complaints, rather than results of mental status examinations.  See Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) ("The [Commissioner] was entitled to give less weight to [the treating doctor's] opinion, because it was based largely on [the claimant's] subjective complaints

Statistical Manual of Mental Disorders 34 (4th ed. 2000) (alterations in original). See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work).

rather than on objective medical evidence.") (quoting <u>Kirby v. Astrue</u>, 500 F.3d 705, 709 (8th Cir. 2007)); <u>Renstrom v. Astrue</u>, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (affirming where ALJ did not give controlling weight to opinion of treating doctor, where doctor's opinion was "largely based on [the claimant's] subjective complaints"). Moreover, in February 2008, when Dr. Raza reported that Plaintiff looked haggard, sick, thinner, and "very worried," Dr. Raza also reported that Plaintiff had not been regularly taking his medicine, <u>see</u> <u>Wildman</u>, 596 F.3d at 964-65 (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control), and that he had just been released from the hospital after developing cellulitis. (Tr. 432).

Also, Dr. Raza's RFC assessment is inconsistent with Dr. Goldmeier's findings upon his mental status examinations of Plaintiff, including Dr. Goldmeier's findings that Plaintiff had only a slightly decreased affect; that Plaintiff was only slightly anxious; that Plaintiff had no psychosis or thought disorder; and that Plaintiff had fair insight and judgment. Where a treating doctor's opinion is not consistent with other more reliable medical evidence of record, an ALJ need not give the treating doctor's opinion controlling weight. <u>Wright v. Colvin</u>, 789 F.3d 847, 853 (8th Cir. 2015) (citing <u>Perkins v. Astrue</u>, 648 F.3d 892, 897 (8th Cir. 2011) ("An ALJ may discount or even disregard the

opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."). See also Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). Indeed, it was "the ALJ's function to resolve conflicts among the various treating and examining physicians" of record. Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006).

Additionally, Dr. Raza indicated Plaintiff could not perform work-related activities by checkmarks on a form. A treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); SSR 96-2p, 1996 WL 374188 (July 2, 1996). Notably, the ALJ gave greater weight to Dr. Raza's treatment notes than the ALJ gave to Dr. Raza's opinion as expressed by checkmarks on the Mental RFC form. Cf. Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'").

### c.     *Opinion of Dr. Goldmeier:*

Dr. Goldmeier opined, in a Mental Assessment of Ability to do Work-Related Activities, dated February 28, 2013, that Plaintiff could relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, maintain attention/concentration, understand, remember and carry out detailed instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability 70% or less of the time; that he could follow work rules, function independently, and maintain personal appearances 80% of the time; and that he could understand, remember, and carry out simple instructions 90% of the time.  (Tr. 768).

The ALJ "had difficulty" in giving "great weight" to Dr. Goldmeier's opinion as expressed in the Mental Assessment of Ability to do Work-Related Activities.  (Tr. 28).  Plaintiff takes issue with the ALJ's doing so.  (Doc. 15 at 14-15).  Upon determining not to give great weight to Dr. Goldmeier's opinion, the ALJ noted that Dr. Goldmeier's opinion was inconsistent with Dr. Goldmeier's treatment notes.  See Cline, 771 F.3d at 1104; Renstrom, 680 F.3d at 1064-65.  As discussed above in regard to Plaintiff's credibility, Dr. Goldmeier reported that Plaintiff had good eye contact; that his mood was only a "little depressed, anxious"; that his affect was "slightly decreased, slightly anxious with no lability"; that Plaintiff had logical and goal directed responses, no suicidal ideations, and

positive future plans; that he was negative for a thought disorder; and that he had fair insight and judgment. (Tr. 749-60).

Plaintiff argues that the ALJ incorrectly stated that Dr. Goldmeier assigned him a GAF of 76, rather than a GAF of 49, which indicates serious symptoms. As a preliminary matter, the court notes that a GAF score of 49 is inconsistent with Dr. Goldmeier's records and notations as set forth above in regard to Plaintiff's credibility, including that Plaintiff had fair insight and judgment, clear sensorium, and logical and goal directed responses, appropriate behavior, and adequate recent and remote memory, concrete abstract reasoning, and that he did not have impaired attention and concentration. (Tr. 745, 749-64). See Cline, 771 F.3d at 1104; Renstrom, 680 F.3d at 1064-65.

Further, the court notes that, in January 2013, Dr. Goldmeier did assign Plaintiff a GAF of 49, and that in the February 2013 Mental Assessment of Ability to do Work-Related Activities Dr. Goldmeier made a handwritten notation that Plaintiff had a GAF of either 76 or 46; Dr. Goldmeier's handwriting is not totally legible. (Tr. 28, 766, 768). Indeed, a GAF score of 49 indicates serious symptoms while a GAF of 76 represents less than mild symptoms. The Commissioner, however, "has declined to endorse the GAF score for 'use in the Social Security . . . disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" See

Jones v. Astrue, 619 F.3d 963, 974-75 (8th Cir. 2010) (quoting Wind v. Barnhart, 133 Fed. App'x. 684, 692 n.5 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). In any case, an ALJ may afford greater weight to medical evidence and testimony than to GAF scores. Jones, 619 F.3d at 974.

To the extent the ALJ may have erred in finding Dr. Goldmeier assigned Plaintiff a GAF of 76, Dr. Goldmeier's GAF finding was only one of the numerous factors considered by the ALJ upon determining Plaintiff's RFC, and there is no indication that, had the ALJ considered that Dr. Goldmeier assigned Plaintiff a GAF of 46 or 49 rather than 76, that the ALJ's RFC determination would have been different. As such, any error in this regard does not require reversal. See Welch v. Colvin, 765 F.3d 926, 929 (8th Cir. 2014) (holding that the ALJ's failure to explicitly address applicable SSR 96-9p was an arguable deficiency in opinion writing that had no practical effect on decision because ALJ found Plaintiff's limitations had no more than a slight impact on claimant's ability to perform the full range of sedentary work; therefore, that was not a sufficient reason to set aside the ALJ's decision); Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently had he read the hand-written notation to say 'walk' rather than 'work' and any error by the ALJ was therefore harmless."); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient

reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

To the extent Dr. Goldmeier imposed work-related restrictions that would have made it impossible for Plaintiff to engage in substantial gainful work activity by making checkmarks on a form, as stated above, such checkmarks are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo, 377 F.3d at 805-06.

In conclusion, the court finds that, upon determining the weight to be given the various opinion evidence of record when determining Plaintiff's RFC, the ALJ was fulfilling his role to resolve conflicts among the various medical sources of record. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). Further, the ALJ gave good reasons for the weight given to the opinions of Dr. DeVore, Dr. Goldmeier, and Dr. Raza. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, or diagnostic evidence). The court finds, therefore, that substantial evidence supports the weight the ALJ gave to the opinions of Dr. DeVore, Dr. Goldmeier, and Dr. Raza when determining Plaintiff's mental RFC and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

### d. Conclusion regarding Plaintiff's Mental RFC:

As stated above, the ALJ found, in regard to Plaintiff's alleged mental limitations, that Plaintiff could only occasionally carry out detailed instructions, but had no limitations in regard to carrying out simple instructions; that he could sustain an ordinary routine without special supervisory attention; and that he could have frequent interaction with supervisors and coworkers and occasional interaction with the general public. For the reasons discussed above, the court finds that the ALJ's mental RFC determination is based on substantial evidence and is consistent with the Regulations and case law.

## 2. Medical Opinion Evidence Relevant to Plaintiff's Physical Impairments:

Upon determining Plaintiff's physical RFC, the ALJ gave great weight to the opinion of Dr. Majure-Lees, a State agency non-examining doctor. Dr. Majure-Lees opined, in a Physical RFC Assessment form, completed on October 10, 2010, that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; that he could stand and sit about 6 hours in an 8-hour workday; that he had unlimited ability to push and/or pull; that Plaintiff could occasionally climb stairs, crawl, crouch, kneel, or stoop; that Plaintiff could never climb scaffolds and ladders; that Plaintiff could frequently balance; that Plaintiff had no manipulative or visual limitations; and that he had unlimited ability to be exposed to extreme cold and heat, wetness, noise, vibration, and fumes; and that he should avoid concentrated

exposure to fumes and hazards such as machinery and heights. In regard to Plaintiff's symptoms, Dr. Majure-Lees noted that Plaintiff did not indicate signs of fatigue to Dr. Krishnan; that Plaintiff described his lower back pain as achy dull; that records reflected Plaintiff had normal gait and a mild decrease in lumbar flexion/extension; and that objective findings showed only mild tenderness and spasm. (Tr. 453-55). Plaintiff argues that the ALJ erred in giving great weight to Dr. Majure-Lees's opinion because Dr. Majure-Lees only had Plaintiff's records from August 2009 to June 2010, and, did not have medical records reflecting that Plaintiff received treatment for Hepatitis C and that he showed signs of fatigue. (Doc. 15 at 14).

First, it was proper for the ALJ to consider Dr. Majure-Lees' opinion, as this doctor is a State agency non-examining consultant. See Wildman, 596 F.3d at 967. Second, as discussed above, the record does not reflect that Plaintiff received actual treatment for his Hepatitis C. Third, the medical evidence considered by Dr. Majure-Lees did reflect that Plaintiff denied fatigue. (Tr. 368, 882). Thus, Dr. Majure-Lees' statement that Plaintiff denied fatigue was accurate. Fourth, as discussed above in regard to Plaintiff's credibility, consistent with Dr. Majure-Lees' opinion, Plaintiff's doctors frequently reported that he had full strength. (Tr. 469, 473-74, 477-78, 483, 487, 891). Finally, when determining Plaintiff's physical limitations, the ALJ considered the record as a whole, not just Dr. Majure-

Lees' opinion.  In conclusion, the court finds that substantial evidence supports the weight the ALJ gave to Dr. Majure-Lees' opinion and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

As stated above, the ALJ found that Plaintiff could engage in light work, which requires lifting no more than 10 pounds frequently and 20 pounds occasionally.  The ALJ further found that Plaintiff could occasionally climb stairs and ramps, but never climb ladders or scaffolds; that he could occasionally stoop, kneel, balance, crouch and crawl; and that he had to avoid concentrated exposure to vibrations and hazards.  Significantly, Plaintiff stated, in a Function Report – Adult, that he did not have difficulty talking, hearing, seeing, or using his hands. (Tr. 296).  For the foregoing reasons, the court finds that the ALJ's physical RFC determination is based on substantial evidence and is consistent with the Regulations and case law.  Thus, the court further finds that the ALJ's RFC determination, in its entirety, is based on substantial evidence and is consistent with the Regulations and case law, and that Plaintiff's arguments to the contrary are without merit.

After determining Plaintiff's RFC, the ALJ posed a hypothetical to a VE which included all of Plaintiff's credible limitations as expressed in the ALJ's RFC determination.  See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those

impairments that the ALJ finds are substantially supported by the record as a whole."). The VE testified that there was work, in the national economy, which a person of Plaintiff's age and with Plaintiff's RFC, education, and work experience could perform. (Tr. 58-59). See Martise, 641 F.3d at 927 ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). After independently consulting the Medical-Vocational Guidelines and the Dictionary of Occupational Titles, the ALJ agreed with the VE. As such, the court finds that substantial evidence supports the ALJ's ultimate determination that Plaintiff is not disabled.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence, on the record as a whole, supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint, and Reply (Docs. 1, 15, 21) is **DENIED**;

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 15th day of December 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE